Next case on our docket is Environmental Packaging Technologies v. Arch Insurance Company. Ms. Greer? Thank you, Your Honor. Good morning, and may it please the Court. My name is Marcy Greer, and I represent the appellants in this matter. When applying the plain language of the Arch policy to the loss, and to be clear, the loss is the state court judgment, the outcome is straightforward. Arch's attempts to shoehorn the judgment into one of its many policy exclusions is to justify its hasty denial of coverage is where it becomes complicated. The loss is the $3 million breach of fiduciary duty judgment. That is what is ordered, adjudged, and decreed. That is what is determined by the judge in the state court proceeding. The findings or the alternative bases of contract and fraud are alternatives, and Texas law instructs that those alternatives are not binding for purposes of preclusion, which I think is highly instructive, because I will be honest, I'm surprised that this issue has not come up, considering how prevalent this practice of putting alternative findings and judgments is. And I suspect that it hasn't come up before very often, because either the policy exclusion does not have a requirement like in the Arch policy that it be established by the judgment in addition to meeting the requirements of the exclusion, or because, generally, Texas law has been so clear about alternative findings not being preclusive. But that body of law is very important, I think, to this court's analysis in the absence of any other law to the effect of these alternative contingent findings of the district court. It's not really a finding, it's more of an announcement of what the jury found, and then saying that this would result in a contract judgment if the fiduciary duty judgment is reversed on appeal. And that never happened. In fact, the fraud part of the judgment was doubly contingent on reversing and losing both the fiduciary duty judgment and the alternative contract findings. So this is really not a situation where you can point to the fraud statement in the judgment and say this is a fraud judgment. It's not established by the judgment. The only thing established by the judgment is breach of fiduciary duty. There was nothing in, there's nothing, though, in the fraud exclusion that requires that fraud be the sole cause of action in the underlying case, right? That's correct, Your Honor. But the exclusion is very clear that the fraud must be established by a final adjudication, a judgment or other final adjudication. And judgment is a term of art. We know that judgment is more than just a piece of paper that a judge signs. It's more than an order. It has a particular meaning. It is where the court pronounces . . . It's a final adjudication or judgment. So isn't this really an election of remedies type situation such that once there was a final judgment, it was a final adjudication that there had been fraud? Well, not really, Your Honor. You didn't elect that remedy in terms of the money judgment, but there was a final adjudication that the jury found and you can't go back and attack that and relitigate it. Well, I would disagree, Your Honor, because it wouldn't be preclusive for collateral estoppel effect because it's a different alternative findings. And Texas is very clear that in the Kennington case and other . . . I'm sorry, the Kenneco case and others that alternative findings are not given preclusive effect because . . . and I thought Judge Rosenthal did a great job of explaining the purpose of the rule in the Kennington paper, that the alternative findings aren't always given the same level of scrutiny because they're not necessary to the judgment. They're only going to become necessary to the judgment if and when there is a reversal on appeal or reduction on appeal and the plaintiff can make another remedy. And so that does not establish anything other than the breach of fiduciary duty, which is what the court ordered a judge and decree. But aren't judgments under Texas law indivisible, so that if you have . . . what you have here where the final judgment states that E.P.T. and Golovina committed fraud, that's stated in the final judgment. If it's an individual judgment, then don't we accept that these are all or nothing? Well, Your Honor, the judgment doesn't state that they committed fraud. It states that the jury found that they committed fraud. And again, the purpose of not giving the same level of preclusion, which by the way, this is all from the restatement . . . So you're saying it's appropriate to ignore the jury's findings? I'm saying that the jury's findings are not necessary to a breach of fiduciary judgment. The jury's findings on fraud. And they can be set aside for lack of evidentiary purposes, they can be set aside for all kinds of reasons. The judge didn't scrutinize that because he awarded judgment on the breach of fiduciary duty claim. And only if there's an appellate award would that have changed. But you have a judgment that says that the jury found that they committed fraud. It recites that, yes, Your Honor. And in any event, one of the insureds, Michael Sims, was exonerated of fraud. And there's no question in the Arch's policy that he was an insured. The magistrate judge confirmed that. Arch hasn't contested it. And he was exonerated of fraud. The jury found no. So there's coverage at least for Michael Sims in this case. It doesn't void coverage for everyone else. So the fraud exclusion cannot, as a matter of law, wipe out the entire coverage dispute. Because our clients step into the shoes of Mr. Sims by virtue of the assignment. Or I'm sorry, the turnover order. The profits exclusion is the other basis that the court offered to award summary judgment. And that requires that there be an unjust enrichment. The actual words of the exclusion are also based on an adjudication by judgment, which makes this case different from some of the other cases that deal with profits. Where a profits or advantage can be found by the coverage court, like in the Jarvis case, or in the O'Quinn case, where the advantage or profits exclusion was addressed. This one also requires that the advantage or undue profit be established by the judgment. And here, there are many reasons why the judgment doesn't get us there. First and foremost, the judge, the trial court judge, split out the award of damages from the award of equitable forfeiture. And I think that's significantly important in this case, because equitable forfeiture is the part of the award that could be an ill-gotten gain that would be subject to the profits exclusion. The jury was not asked to attribute any findings as to whether the damages award was based on any benefit. In fact, there were multiple grounds that the jury could have found a breach of fiduciary duty. The way the question is asked is, did the defendants comply with all of these duties? And it lists five, and it's stated in the conjunctive. So to get a yes answer, you had to find that all five were complied with. To get a no answer, as the jury found as to the defendants, you only had to breach one. One of those duties was the duty to fairly inform him of what was going on. The facts bear that out very well. He was kept in the dark. That was his biggest complaint. So this is not the kind of situation where the benefit would be tied to the damages. And damages are not part of an equitable forfeiture discussion. Damages are to make a defendant whole. They don't confer a benefit on the defendant that the defendant has to give back. That's the purpose of equitable forfeiture. And we know that that's exactly what happened here, because the equitable forfeiture award can be traced back to the $150,000 that Sims originally invests. And the court said, all three of the defendants who were liable for a breach of fiduciary duty have to give back the $150,000 benefit. Multiply that times three, 450. Very clear from the judgment. That's the benefit that's being given back. If you look at the definition of the profit's exclusion, the judgment that must establish it shows that at the very most, the equitable forfeiture award would be subject to that exclusion. Now, we've raised that argument in the trial court. We've raised it on appeal. We've never heard an answer from ARCH about that. They just say it's all the same ball of wax. But that's not what the policy says. And there's no way that you can somehow fit, shoehorn, the damages award, the $3.5 million, into the profit's exclusion. One other thing that I think is very important here is that both of these exclusions in the ARCH policy, both of them are covered by what's called a corporate limitation. And what it says is that the actions of an individual will not be imputed to the company for purposes of this limitation unless that person is in the C-suite or a board chair. So that means that APT Limited, it can be liable under vicarious liability Texas law, as the jury was charged, and as the jury apparently found, for the actions of Sims and Golovina. But the corporate exclusion prevents either the fraud or the profit's exclusion from applying unless they were a C-suite officer or one of the specifically named party directors and officers. And it's the board chair, the C-suite officers, or a limited liability manager, which doesn't apply here. So there is no finding that they were any of those positions. In fact, the evidence is to the contrary. Golovina was a director and Sims was in the management level,  would fit within the policy. Unlike the National Union policy, which had some more expansive language, this is very specific as to the types of officers, the names of those positions, that will trigger the corporate limitation. It's part of the exclusion. And Arch had the burden to prove it. They did not. As a matter of law, summary judgment was improper on both of the policy exclusions. I want to say a little bit about the notice argument and the tender argument. That was something that Arch didn't raise until the coverage litigation. And there's a really good reason for it. Arch was very clear that they had been tendered the defense of this case. As we lay out in the brief circumstances of the very hasty denial within three hours of getting the very voluminous file and making a decision, a few days later, a letter comes out from Arch to its insurer. And it says, the policy provides no coverage, defense, or indemnification for this matter in rule of print. This is 5004 of the record on appeal, which is the definitive document that Arch, in its statute of limitations argument, says is the definitive denial of coverage. So this was the first denial of coverage and the absolute denial of coverage. It also goes on to say, a point was raised that maybe Mr. Sims and Ms. Golovina were not insured or didn't give notice of the tender of coverage and defense. It says, quote, on page 507, as Mr. Sims and Ms. Golovina are alleged to be officers and or directors of EPT, they are each an insured person. They reserve the rights to declare that. Otherwise, they've never taken a different position. So this whole idea that there was no tender and the re-tender, there are multiple, multiple discussions between Arch's counsel and the plaintiff's counsel trying to work out a settlement. Not that Arch ever offered to pay any money, to be clear. But there were lots and lots of, there was lots of involvement by Arch. There was no question that they knew what was going on. They had counsel at trial, monitoring the trial. They knew about the verdict because the plaintiff sent it to them, plaintiff's counsel. And this argument that they didn't know about the judgment, notice they never say they didn't know about the judgment, they just say we didn't send it. So that's a non-starter. Thank you. I also wanna talk a little bit about the contract exclusion. We've talked before about the alternative contingent nature of the contract findings, which are the first layer of contingency in the judgment. But the contract exclusion doesn't apply either because this is not a situation where the contract is the tail wagging the dog for the torts. And a typical contort where it's really just a breach of contract. And then there's some other things going on. If you look at the jury charge, the charge is clear that the breach of fiduciary duty was in connection with a quote, transaction. It doesn't talk about a contract. It talks about a transaction, a broader set of relationships that gave rise to fiduciary duties. They also argued fraud, et cetera. And there were many statements to Mr. Sims, both before he entered into the oral contract to invest and afterwards. The promises, you'll get the stock, you'll get the stock. These promises were consistent with recklessness, we believe. And I think the jury actually, that's how they analyze this case. And I wanna walk you through the charge to kind of show where that is revealed. Because I do think, counsel has suggested that perhaps we don't have a decent argument on recklessness, that it's either no fraud or all in deliberate fraud. But we do, there's an interim ground. And I think that that's important because they've not offered a single case where deliberate fraud and exclusion was equated with recklessness. In fact, the two cases the magistrate judge relied upon and Arch relies upon on appeal do not deal with that issue at all. So let me talk to you about the charge because I think it's, going back through it, I was struck. In question. Counselor, your time has expired. Nope. I'm so sorry, Your Honor. I'll hold it for a moment. That's all right. Mr. Dove. Good morning, and may it please the court. I'm Chris Dove on behalf of the Appalee Arch Insurance Company. This morning, I think I will take the arguments in the same order that Ms. Greer took them and that the magistrate judge took them, fraud, profits, and then whatever else the court cares to hear about. Though, of course, I'm ready to talk about any questions you may have. What I was really taken with in Ms. Greer's discussion of fraud this morning is that, as she did in the brief, I think she is conflating three separate concepts. She prefers to talk about the judgment as though it has alternative findings regarding fraud, which it does, but that is not its most interesting feature to me. What's most interesting to me is what Judge Graves pointed out. This is a judgment that expressly types out the jury found the following and recites the entire verdict and puts it into the judgment, and then on top of that, incorporates the jury's verdict for all purposes. This is not a situation in which there's any doubt whatsoever that the fraud findings were found by the jury or that the court felt strongly enough about them to put them into the court's judgment. That's important because what we're looking at is a provision in Arches' policy that says, that the final adjudication in such claim or other proceeding establishes that such act, omission, or violation occurred. It does not require that the judgment be entered on it. It could have said that, but that's not what the policy says. It says that it establishes that fraud occurred, and we believe that that's exactly what happened with this judgment. It says that it occurred, and we should not be affected by the fact, as Chief Judge Owen pointed out, that in Texas, you must elect one of the remedies when they overlap like this. It was found to have occurred, and that defeats the claim. I think that is enough to describe fraud altogether. Ms. Greer was about to start talking about the idea of recklessness and fraud. She'd begun on contract, and it sounded like she was turning back to the question of fraud, and we've explained this in our brief also. As the restatement second of torts explains, when it comes to the concept of recklessness, you have to consider it fully in the context of all of the requirements of fraud. This is why there are so many Texas cases that describe common law fraud as an intentional tort, because what happens in the so-called reckless fraud is that somebody knows that they do not have all the information, chooses to speak anyway, and intends that the hearer rely on that false sense of assurance that they are giving them. That is a deliberate fraudulent act. This is not like other kinds of torts that are called fraud that this provision would exclude. We've talked about how there's constructive fraud in Texas, which sometimes does not even involve an element of scienter. There are forms of statutory fraud that exist across the United States in which you draft it, and it has more of a strict liability feel. It would exclude those. But in this case, where what we have is a judgment, at the very least, somebody knew they were telling something that they didn't know if it was true, chose to say it anyway, and then intended that the person rely on it, we have established a deliberate fraud. Moving then on to the profits exclusion, we're looking at a provision that talks about arising from based upon a retribution to the gaining of any personal profit, remuneration, or advantage. We've talked in our brief about how this court's Jarvis case makes clear that advantage is an extremely broad word. It includes not only profit and remuneration within it, but the opportunity to have a gain, not even if it wasn't fulfilled, to which insured is not legally entitled if, and just as in the fraud provision, a final adjudication in such claim establishes that such profit, remuneration, or advantage occurred. When it comes to profits, we don't even have that last part. It's expressly a judgment entered on a breach of fiduciary duty finding. We have here an absolute finding that there was an advantage taken because if you look at the way that the jury charge is written, question two, the jury found that these defendants benefited or profited, and because they answered that, they were allowed to go on to answer question three, which is the finding of breach of fiduciary duty, which then taking those two together leaves no doubt that there was an advantage taken. Now, Ms. Greer claims that there is then a failure to link up with the damages that follow, and this is where we get into the concept of not legally entitled. The verdict leaves no doubt that the jury had to answer that question about damages if it found breach of fiduciary duty. It's one damage question for all three theories because there was only one theory of damages. The expert witness on damages said that there is only one harm that flowed from all of the causes of action. It was the loss of what Mr. Griffiths would have benefited from his bargain, that amount of money he would have gained from his investment, and then the amount he was out of pocket by having sent the original investment to Gallivina. We know that that flows from the breach of fiduciary duty finding for two reasons. The jury was instructed to answer that question if it found breach of fiduciary duty, and then the judge actually entered judgment on it. These are the damages. We know then that they're not legally entitled to keep them because they are ordered to give them up in the form of a judgment. They have pointed out that Texas has a case, Burrow v. Arce, a very important case in Texas jurisprudence, which says that there is theoretically another step in which you can find breach of fiduciary duty, but there are circumstances where the court can say, as an equitable matter, you breached your fiduciary duty, but some of what you did was earned, and so I will allow you to keep, in that case, the attorney can keep some of the fees earned, but he would have to disgorge some of the others. This is not that case, and we know it's not, because the court actually ordered the defendants to pay this money as a result of a breach of fiduciary duty. And I guess to put a final note on this argument, one thing that the plaintiffs, the appellants, don't point out is that the magistrate recognized in the memorandum of opinion, the term claim is defined to involve the entire lawsuit. Any finding that there was a profit is going to defeat the entire claim. We don't think you have to get there because all of the damages flowed from a finding of breach of fiduciary duty. This completes every element of the profits and costs exclusion and takes care of it all. The next question then is whether we need to worry about the imputation clause that has been cited by the appellants, and we don't believe that this even applies to the case for two reasons, as we pointed out in our brief. First, the point has been waived. It was not raised to the magistrate judge. They point out that, well, we quoted the language in our response to your motion for summary judgment, but if this court looks, it will see that what happened is they quoted a lot of language from the policy, but they did not explain why it applied, and this court has repeatedly held, most specifically for purposes here in Cupid versus Whitley, a 1994 case, that when you're in front of the magistrate judge, you must spell out your arguments squarely and distinctly. It's not enough to have put in the language. You have to explain why it applies, and they never did that, which explains the nagging question of why didn't the magistrate address this in his memorandum of opinion. It's because he never understood it to have been raised, and it doesn't matter even if they had raised it because the jury found direct liability in this case. They were worried about the fact that the policy uses the word imputed, but if you look at the entire clause, it does not mean any theory of vicarious liability is limited to this. The first provision, sub Roman I, no wrongful act of any insured person shall be imputed to any other insured person, which is very clear. If Sims were found liable, that doesn't mean Golovina loses coverage and vice versa. Individuals are not imputed by the other, but this doesn't mean imputed through some sort of vicarious liability theory. Moving on to the next one, which is what they emphasize. Only a wrongful act by a past, present, or future chief executive officer, chief operating officer, chief financial officer, and I should pause at this point. Persistently, the appellants keep quoting the wrong version of this clause. I pointed out out of a duty of candor to the court, their version is theoretically better for us, but at page 4949 of the record, they keep quoting a version that was superseded by an amendment in the policy. A C-level executive of any insured organization shall be imputed to an insured organization. What this means is we are expanding the coverage offered to EPT Limited. If they find only fraud by, say, Sims or Golovina, and not by EPT Limited, EPT Limited still has coverage because there's no evidence that Sims or Golovina were a C-level executive. However, if EPT Limited, as in this case, is directly found to have committed the breach of fiduciary duty, or the fraud, or the breach of contract, as it was, then it must suffer the consequences of that under the policy. The question is not for this court to interpret the judgment in this case. The question is what does the policy mean when it says imputed? That doesn't require rummaging around to see what the jury's thought process was. It means what does imputed mean? And clearly in this case, it does not involve the case where the insured itself is found directly liable. The last point that my colleague has brought up this morning was the notice and tender issue. And this is a situation where I think the court could get confused because there are similar concepts that need to be kept separate. This policy has a notice of claim provision, which is not an issue. We absolutely agree that notice of claim was given for purposes of the summary judgment motion. What we're talking about is defense costs, and our contract says you must defend yourself. The only circumstance in which we will defend ourselves or defend you is if the very first communication you send us tenders a defense. It is as unequivocal on this point as it could be. And also this court will find the record unequivocal that the first communication does not tender the defense. To the contrary, they were already represented by counsel and defending themselves. So they complied with one part of the policy, the notice of claim. That's why we're not talking about that. They did not comply with their theory of what they wanted to do, to tender to get a defense. There's a complaint that we didn't raise this until the coverage of litigation arose. Well, just so. At the time when they sent this, they were obligated to defend themselves. They were defending themselves. We said, we don't believe there is coverage for this, and then proceeded on. It wasn't until they claimed that we had made the wrong decision by filing lawsuit that we had to then lay out our explanation for why this was. And here we are giving our answer. There's nothing surreptitious or improper about it. As this court knows, there are a number of other issues that have been briefed in the lengthy briefs that have been filed before the court. I'm prepared to discuss any or all of them with the court, but otherwise, I've said what I came here to say this morning with the court's indulgence, and I'm prepared to yield the rest of my time. Would you address their argument about Sims? Yes. As we have said in the district court, and as we've said in our briefs here, Sims was not found liable for fraud. So the fraud exclusion does not apply to him. The profits exclusion does, and that's why we pointed out in our brief, the easiest way for this court to write its opinion is to affirm on the profits exclusion and say the rest of this has become moot. There are a number of other arguments that we have that address Sims. So in a world in which you said, I don't agree with you on profits, though you should, and whatever you rule on fraud, Sims would not be affected by that. There are several of these other arguments that affect Sims. One of the issues that would come up with Sims that we would think the court should take a look at is the fact that loss is defined to exclude any amount for which the insureds are not financially liable or for which the claimants are without legal recourse to the insureds. Not only has the settlement discharged any liability that Sims owes, he didn't pay a dime. The only consideration he gave was giving up his appeal. Appellants have cited a number of cases that talk about the first half of that provision, become legally obligated, and they cite cases that only talk about that. We are talking about a provision that seems specifically drafted to reverse that outcome by saying for which the insureds are not financially liable or for which the claimants are without legal recourse. It seems designed to reverse the Texas rule, which as this court will recall, is that become legally obligated in a liability policy says, well, you became legally obligated, you were liable, and so you still must offer coverage. But in this case, the additional language says not only that you became legally obligated, but that you have to remain obligated. You have to still have to pay the judgment. Unquestionably, that is not true. They have tried to say, well, what might happen is that Mr. Griffiths might violate his covenant not to execute, execute on the judgment against Sims in this hypothetical, and then that means that it should be covered, notwithstanding the fact that immediately Griffiths would be in violation of his own contract and would have to pay back every penny of it plus attorney's fees in a breach of contract action. That is an unreasonable reading of any contract, and we think that's just not an appropriate way of looking at the case. There are other, many of the other defenses also apply to Sims, and I'm prepared to discuss any of them that you wish. Fence costs, the timing of the providing of notices, so. Very good. Thank you very much for your time. Let me start by saying that the beginning foundational starting point of each exclusion is the loss. Arch will not cover a loss arising out of and for fraud and adjudication of fraud as established by the judgment. The loss here is the state court judgment, which is a fiduciary duty judgment, not fraud and not contract. The profits question, there's no basis to say that all of the damages other than the 450,000 of equitable forfeiture are excluded under the profits exclusion. There's nothing that connects it up between the jury's findings and that damages provision. And in fact, the damages provision suggests otherwise. Damages makes Mr. Griffiths whole for his losses as a result of breach of fiduciary duty. The equitable forfeiture is the ill-gotten gain that was conferred on the defendants that has to be given back. And if you note in Judge Edison's opinion, his memorandum and recommendation, he says he focuses on that 450,000 as establishing the advantage. So that is not gonna be sufficient. The fact that there was one damage theory really doesn't make any difference. Judge Edison recognized in the argument in this case that you really can't match up what damages go where. The jury made one finding, he awarded the damages. It is a similar theory, but it's based on very different causes of action. Breach of fiduciary duty revolves around the relationship pre-contract. Contract is one thing and fraud is yet another. There were representations made to Mr. Griffiths after the transaction was initially, after he sent in his money and started down the path with them. And they kept telling him, don't worry, you'll get it, you'll get it. They were just trying to get him to, you know, move on and keep going and do things for them. They were reckless when they said them. But, and I was gonna, I told you that I would let you, walk you through the jury charge about recklessness. In question seven of the jury charges, common law fraud, the jury found fraud. Question eight is statutory fraud. It does not contain a definition of recklessness, does not contain that as a standard. The jury found no fraud. So you have to look at that. Then even more to the point, a question from the jury during the deliberations with respect to question 16, which was the punitive damages award, which they did not find. What is the legal definition of fraud to consider? Is it the definition is the same as question seven, common law fraud, question eight, statutory fraud, question nine, fraud, and or some other definition. This is 8774 of the record. The jury was clearly looking at this. The corporate limitation waiver, it was preserved in the motion for summary judgment papers. And keep in mind that the corporate limitation is part of the exclusion. It is something that Arch had the burden of proof on as part of its exclusion to apply. It never put on evidence. It never made the argument. We raised it again in the objections to the magistrate's report and recommendation. We've signed a case law that says that's sufficient to preserve error. We specifically pointed you to those pages. The issue was not waived. And the reality is that Arch has never addressed it, and it precludes both of the exclusions from applying here. The tender of defense costs, there's no definition in the policy of what a tender is. Everyone knew what was going on with these communications. The petition was sent to the insurer. Arch denied it. Arch did a long coverage letter, and it said there is no coverage. There is no defense. There is no indemnification. They were very specific. Those words are in bold, conspicuous print on the first page of its letter. They recognized that Golovina and Sims were insured. They knew exactly what was being asked of them, and they responded accordingly. There are multiple further communications where it was clear that the insureds were trying to get Arch to take over the defense, take over the indemnity obligation. Arch steadfastly refused. There's no tender issue here. As to recourse, they're misrepresenting what the non-execution agreement is. The agreement not to execute is limited. It is not all assets of Sims and Golovina. It's very specific assets. They are still on the hook. They are still liable. They have not released that liability in any way, shape, or form, and that's where Texas law draws the line. If you release your liability, then you really have put the insurer out, but the Texas courts recognize that when an insurer is leaving you defenseless, you have the ability to try to mitigate your damages and protect yourself by entering into an agreement not to execute. Even in a full-out agreement not to execute, like in the YMCA case that we cite, they found no problem with that. It did not release the underlying obligation. Thank you, Counsel. Thank you. I enjoyed it. Thank you.